UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Julie Ann Mace,     :     Civil No. 3:15-cv-01229
                    :
        Plaintiff,  :
                    :
    v.              :     (Judge Munley)
                    :     (Magistrate Judge Saporito)
Carolyn W. Colvin,  :
                    :
        Defendant.  :

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

The plaintiff Julie Ann Mace ("Ms. Mace"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disabled widow's benefits and disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

Ms. Mace alleges that she suffers from a debilitating array of mental impairments that are so severe that they manifest physical symptoms, including extreme nausea and vomiting. The record reflects that Ms. Mace's blood potassium level was critically low at times due to her

symptoms, and Ms. Mace alleges that she is completely incapacitated by anxiety induced nausea and vomiting. She reported that she is completely incapacitated by her symptoms approximately three times per month.

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, we find that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner denying Ms. Mace's claim be AFFIRMED, and Ms. Mace's request for relief be DENIED.

## II.   BACKGROUND AND PROCEDURAL HISTORY

Ms. Mace has a high school education and previously worked as a home health assistant, and psychiatric aide in a State hospital. The record reflects that her work was extremely stressful, and Ms. Mace alleges that she was frequently assaulted by her patients. Ms. Mace reported that during her employment she was in constant fear for her physical well-being.

2

On April 2, 2011, treating psychiatrist Keith Tolan ("Dr. Tolan") noted that Ms. Mace had a long history of both manic and depressive symptoms. (Tr. 448-450). He noted that episodes of manic behavior were rare, and that Ms. Mace was depressed approximately 90% of the time. Id. Dr. Tolan also noted that Ms. Mace's work was a major source of stress and anxiety. Id. During his examination, Dr. Tolan observed that Ms. Mace was cooperative, suffered from no delusions, demonstrated a delayed but coherent and relevant stream of thought, and had a dysthymic mood and restricted affect. Id. Dr. Tolan diagnosed major depressive disorder without psychosis, and bipolar disorder currently in a depressive state. Id.

On May 12, 2011, Ms. Mace told Dr. Tolan that she was "falling apart" and had missed work for five days due to stress. (Tr. 451).

On June 9, 2011, Ms. Mace told Dr. Tolan that she was feeling better, but was still stressed. (Tr. 452). She reported that she experiences nausea two times per week. Id.

On August 11, 2011, Ms. Mace told Dr. Tolan that her medications were working "pretty well" and that her nausea was still present but to a

lesser extent. (Tr. 453).

On September 30, 2011, Ms. Mace reported that she was over-stressed at work, and was vomiting daily due to work-related fear and anxiety. (Tr. 454).

On November 19, 2011, Ms. Mace told Dr. Tolan that she was doing better, and that her nausea and vomiting stopped after she ended a longtime romantic relationship. (Tr. 455).

On January 26, 2012, Ms. Mace told Dr. Tolan that she was being worn down at work, and that her vomiting increased. (Tr. 456). Ms. Mace reported that she could not get her mind off the problems at work. Id.

On February 16, 2012, Ms. Mace reported that she was having frequent episodes of nausea and retching, and was under a lot of stress at work due to constant fear for her safety while caring for violent patients. (Tr. 457). Dr. Tolan noted that it was becoming increasingly difficult for Ms. Mace to function. Id.

On March 15, 2012, Dr. Tolan noted that Ms. Mace was doing fairly well overall, and she was able to deal with most of her stress, except her a constant fear of being assaulted by her patients. (Tr. 458).

On May 24, 2012, Ms. Mace reported that her job was the driving factor behind her symptoms, and that she dreads going to work each day. (Tr. 459). Ms. Mace reported that she vomited frequently to the point of not being able to hold down any food, and that her gastrointestinal issues were causing problems at work due to missed time. Id.

On June 23, 2012, Dr. Tolan noted that Ms. Mace was dysphoric and anxious due to job stress, and that Ms. Mace's symptoms were made worse by the fact that she was unable to keep down a full dose of her medications secondary to vomiting. (Tr. 460). Dr. Tolan noted that the treatment plan was for Ms. Mace to stop work and seek disability. Id.

On July 17, 2012, Ms. Mace reported that she felt a wave of relief because her employer approved her for disability retirement. (Tr. 461). Dr. Tolan's treatment plan was to continue with Ms. Mace's current dosage of medication and gradually reduce it over time as Ms. Mace's symptoms abate. Id.

On August 30, 2012, Dr. Tolan noted that Ms. Mace was not doing well despite leaving her job. (Tr. 462). Ms. Mace did not report any nausea or vomiting, but did complain that she felt weak and down. Id.

5

On October 11, 2012, Ms. Mace reported problems with nausea and vomiting secondary to external stressors. (Tr. 463). Ms. Mace reported that she was under additional stress due to her upcoming wedding. Id.

On November 24, 2012, Ms. Mace reported that a new medication she started the month before (Clonidine) was helping her address the physical manifestations of her anxiety. (Tr. 464). She reported that her mental status was stable overall. Id.

On December 5, 2012, Ms. Mace protectively filed applications for social security disability benefits, and disabled widow's benefits. In both applications Ms. Mace alleges that she became disabled beginning July 21, 2012, when she was fifty-three years old, due to the following conditions: depression; bipolar disorder; chronic nausea; opiate addiction; broken heels in both feet; status post discs in spine. (Tr. 162).

On January 8, 2013, Ms. Mace's treating psychiatrist, Dr. Tolan, completed a medical source statement assessing Ms. Mace's ability to engage in mental work-related activities. (Tr. 442-444). Dr. Tolan opined that Ms. Mace would have moderate difficulty understanding and remembering simple instructions, carrying out simple instructions, and

making judgments on simple work-related decisions.[1]  Id.  Dr. Tolan opined that Ms. Mace would have marked difficulty understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, interacting with the public, interacting with supervisors, interacting with co-workers, and responding to usual work situations and changes in a routine work setting.  Id.  Dr. Tolan explained that Ms. Mace developed post-traumatic stress disorder while working at a State hospital where she was repeatedly assaulted by her patients.  Id.  He explained that, as a result of this trauma, Ms. Mace has no resilience, and has physical and mental symptoms that are triggered when she is under stress.  Id.

On January 31, 2013, State agency psychologist Paul Taren ("Dr. Taren") completed a psychiatric review technique ("PRT") assessment and

---

[1]The check-box assessment completed by Dr. Tolan uses the following five-point scale to rate the degree of functional impairment in each activity: "none" when there is no or minimal limitation; "mild" when there is a slight limitation, but the individual can still function well; "moderate" when there is more than a slight limitation but the individual can still function satisfactorily; "marked" when there is a serious limitation and substantial loss in the ability to effectively function in a particular area; and "extreme" when there is a major limitation and the individual has no useful ability to function in a particular area. (Tr. 442).

mental RFC assessment after reviewing the evidence available on that date, including Dr. Tolan's January 2013 medical source statement and Ms. Mace's treatment notes from Dr. Tolan's office from April 2011 through January 2013. (Tr. 69-70, 73-74). In his PRT assessment, Dr. Taren assessed that Ms. Mace had medically determinable impairments that did not precisely satisfy the diagnostic criteria of listings 12.04 (affective disorders) and 12.09 (substance abuse disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Dr. Taren assessed that these impairments result in: a mild restriction of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. Id. In his mental RFC assessment Dr. Taren noted that Ms. Mace could be expected to have moderate difficulty carrying out detailed instructions, maintaining attention and concentration, and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Id. He explained that Ms. Mace experiences variable distraction with discomfort, worry, and stress. Id. Dr. Taren also assessed that Ms.

8

Mace would have moderate difficulty responding appropriately to changes in the work setting. Id. Dr. Taren also assessed that, Ms. Mace is able to carry out simple, routine tasks despite the limitations associated with her impairment. Id.

On the same date, State agency medical consultant Louis Bonita ("Dr. Bonita") completed a physical RFC assessment after reviewing the evidence available on that date. (Tr. 71-73). Dr. Bonita assessed that Ms. Mace could: occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk (with normal breaks) about six hours per eight-hour workday; sit (with normal breaks) for a total of six hours per eight-hour workday; push and/or pull (including the operation of hand and/or foot controls) without any limitation other than shown for lifting and carrying; occasionally climb ramps/stairs, kneel, and crawl; frequently balance, stoop, and crouch; and never climb ladders, ropes or scaffolds. Id.

Ms. Mace's claims were denied at the initial level of administrative review on February 1, 2013. Thereafter, Ms. Mace requested an administrative hearing, and continued to develop evidence to support her claim while waiting for the hearing to take place.

9

On March 8, 2013, Dr. Nolan noted that Ms. Mace has a pattern of improvement followed by regression of her overall mental status that is heavily influenced by external stressors. (Tr. 624).

On March 19, 2013, Dr. Tolan completed a second medical source statement. (Tr. 488-491). In this medical source statement, Dr. Tolan assessed that Ms. Mace had: "good" ability to follow work rules; "good" to "fair" ability to understand, remember, and carry out simple job instructions; "fair" ability to remember work-like procedures, sustain a routine without special supervision, work in coordination with or proximity to others, and understand, remember, and carry out detailed (but not complex) job instructions; "fair" to "poor" ability to maintain concentration, interact with supervisors, get along with co-workers or peers, ask simple questions and request assistance, function independently, use judgment in work-like settings, and understand, remember, carry out complex job instructions, and maintain personal appearance; and "poor or no" ability to maintain attention for extended periods, maintain regular attendance, make work-related decisions, deal with work stress, deal with the public, behave in an emotionally stable

manner, relate predictably in social situations, or demonstrate reliability.[2] Id. Dr. Tolan explained that situations that place mental or emotional demands on Ms. Mace will cause her to shut down such that she would be unable to function in any work environment. Id.

On April 8, 2013, Ms. Mace reported that she was doing "all right" per her mood. (Tr. 622).

On August 8, 2013, Dr. Tolan completed a third medical source statement.[3] (Tr. 492-95). In this medical source statement Dr. Tolan assessed that Ms. Mace had: "unlimited/very good" ability to follow work rules; "good" ability to remember work-like procedures, understand, remember, and carry out simple job instructions, and sustain a routine

---

[2]The second check-box form completed by Dr. Tolan used the following five-point scale to rate the degree of functional impairment in each activity: "unlimited or very good" when the individual's ability to function is more than satisfactory; "good" when the individual's ability to function is satisfactory; "fair" when the individual's ability to function is seriously limited but not precluded; and "poor" when the individual's ability to function is precluded.

[3]The third check-box form completed by Dr. Tolan used the following five-point scale to rate the degree of functional impairment in each activity: "unlimited or very good" when the individual's ability to function is more than satisfactory; "good" when the individual's ability to function is satisfactory; "fair" when the individual's ability to function is seriously limited but not precluded; and "poor" when the individual's ability to function is precluded.

11

without special supervision; "fair" ability to maintain attention for extended periods of two-hour segments, interact with supervisors, get along with co-workers or peers,  ask simple questions and request assistance, function independently, deal with the public, understand, remember, and carry out detailed (but not complex) job instructions, and maintain personal appearance; and "poor or no" ability to maintain regular attendance and be punctual, work in coordination with or proximity to others, maintain concentration, make work-related decisions, complete a normal workday or workweek without interruptions from her psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, deal with work stress, use judgment in work-like settings, understand, remember, carry out complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. Id. Dr. Tolan noted that since being off from the State hospital, Ms. Mace's nausea and vomiting has improved by approximately 80%. Id. Appended to Dr. Tolan's medical source statement is a form outlining the requirements of listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 496-98). Dr. Tolan wrote notes about symptoms relevant to certain criteria of the

12

listing. Id.

On December 12, 2013, Dr. Tolan noted that Ms. Mace reported that although anxiety is still present, she has not had any nausea or vomiting for months. (Tr. 615).

On December 17, 2013, Ms. Mace, with the assistance of counsel, appeared and testified at an administrative hearing before Administrative Law Judge Michelle Wolfe. During her hearing, Ms. Mace reported that her nausea was still present, but that her vomiting was "a little better." (Tr. 48). She testified that she experiences episodes of vomiting three times per month, with episodes lasting between one and twelve days. (Tr. 49). On February 27, 2014, the ALJ denied Ms. Mace's applications for benefits in a written decision. Ms. Mace requested review of the ALJ's February 2014 decision by the Appeals Council of Disability Adjudication and Review, but her request was denied on April 20, 2015. This denial makes the ALJ's February 2014 decision the final decision of the Commissioner denying Ms. Mace's claims.

On June 21, 2015, Ms. Mace initiated this action by filing a complaint. (Doc. 1). Ms. Mace alleges that the Commissioner's decision denying her claims is not supported by substantial evidence, and that the

decision contains errors of law. As relief, Ms. Mace requests that this Court enter an order awarding benefits or, in the alternative, remand this matter for a new administrative hearing. On August 24, 2015, the Commissioner filed her answer. (Doc. 10). The Commissioner contends that the decision holding that Ms. Mace is not entitled to benefits is correct and in accordance with the law and regulations, and that the ALJ's findings of fact are supported by substantial evidence. Together with her answer the Commissioner filed a certified transcript of the entire record of the administrative proceedings relating to this case. (Doc. 11).

This matter has been fully briefed by the parties and is ripe for decision. (Docs. 16, 17, 18).

III. LEGAL STANDARDS

A. SUBSTANTIAL EVIDENCE REVIEW - THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901

14

F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Mace is disabled, but whether the Commissioner's finding that she is not disabled is supported by

substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B. INITIAL BURDEN OF PROOF, PERSUASION AND ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe

16

physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).

Although the standard for proving disability is identical in applications for Title II disability insurance benefits, and for disabled widow's benefits, these types of benefits have different non-disability eligibility requirements.

To be eligible to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

To be eligible to receive disabled widow's benefits, a claimant must show that he or she is: (1) the widow or widower of a deceased worker; (2) has attained the age of 50; (3) is unmarried or is subject to an exception to this requirement pursuant to 20 C.F.R. § 404.335(e); and (4) has a disability that began before the expiration of the "prescribed period." [4] 20

---

[4]The prescribed period begins on the date of the wage earner's death. This period ends the earlier of: (1) the calendar month before the month

C.F.R. § 404.335.

In making the disability determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience   and   residual   functional   capacity   ("RFC").     20   C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.  §§404.1520(e),  404.1545(a)(1).   In making this

_____

the widow or widower attains age 60; or (2) the later of seven years after the worker's death, or seven years after the widow or widower was last entitled to survivor's benefits.  20 C.F.R. § 404.335.

assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on

which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   ANALYSIS

A.   THE ALJ'S DECISION DENYING MS. MACE'S CLAIM

In her February 2014 decision denying Ms. Mace's claims, the ALJ found that Ms. Mace met the non-disability eligibility requirements for Title II disability insurance benefits through December 31, 2017. With respect to Ms. Mace's widow's disability benefits, the ALJ found that Ms. Mace is an unmarried widow of a deceased insured worker, has attained the age of fifty, and that the prescribed period began on October 29, 2009, and ends on October 31, 2016. Then, the ALJ evaluated Ms. Mace's applications at each step of the sequential evaluation process.

At step, one the ALJ found that Ms. Mace did not engage in substantial gainful activity between July 21, 2012, and February 27, 2014

("the relevant period"). At step two, the ALJ found that Ms. Mace had the following medically determinable severe impairments during the relevant period: major depressive disorder, bipolar disorder, and lumbar degenerative disc disease. (Tr. 22-23). The ALJ also found that Ms. Mace had the following medically determinable non-severe impairments: lumbar strain, tobacco use disorder, urinary tract infection ("UTI"), gastroenteritis, hypokalemia (potassium deficiency), gastro esophageal reflux disease ("GERD"), Barrett's esophagus, and seizure. Id. At step three, the ALJ found that, during the relevant period, Ms. Mace did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-25).

Between steps three and four the ALJ assessed Ms. Mace's RFC. The ALJ found that, during the relevant period, Ms. Mace had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), and could:

> lift/carry 25 pounds frequently and up to 50 pounds occasionally. She can sit for 2 hours and stand/walk for 6 hours in an 8-hour day. She can frequently balance, stoop, and crouch. She can only occasionally kneel, crawl, and climb but never on ladders, ropes, or scaffolds. She can do simple, routine tasks but no complex tasks, in a low stress environment. Low stress defined as only occasional decision-

21

making, occasional changes in the work setting, and occasional interaction with public, co-workers, and supervisors.

(Tr. 26).

The ALJ's conclusions at steps four and five were based on the above-quoted RFC, and informed by VE Henzes. At step four, the ALJ concluded that Ms. Mace could not engage in her past relevant work as a home health assistant or psychiatric aide, because Ms. Mace's former occupations because her current RFC limits her to unskilled work. (Tr. 30). At step five, the ALJ found that considering Ms. Mace's age, education, work experience, and current RFC, that Ms. Mace could adjust to other work that exists in the national economy. (Tr. 30-31). Accordingly, the ALJ concluded that Ms. Mace was not disabled under the Social Security Act at any time during the relevant period.

### B.   WHETHER MS. MACE'S NAUSEA IS A SEVERE IMPAIRMENT

Ms. Mace argues that the ALJ committed an error of fact and of law when she found that Ms. Mace's gastroenteritis was a medically determinable but non-severe impairment at step two of the sequential evaluation process. (Doc. 16 pp. 4-8); (Doc. 18 pp. 2-3). Ms. Mace argues that the ALJ's assessment of her gastroenteritis was flawed because the

22

ALJ evaluated it as a purely physical impairment instead of examining the severity of this condition in combination with its underlying cause – her mental impairments. She also notes that there is ample evidence that this impairment could be expected to result in an unreasonable number of workplace absences, which would have a significant impact upon her ability to engage in basic work activities, and that the record reflects that Ms. Mace's vomiting was triggered by work stress while she was employed at the State hospital. (Doc. 18 pp. 2-3). In response, the Commissioner argues that the ALJ's determination at step two is supported by substantial evidence. (Doc. 17 pp. 12-13).

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairments are (1) medically determinable or non-medically determinable, and (2) severe or non-severe. See 20 C.F.R. §404.1520(a)(4)(ii)("If you do not have a severe medically determinable physical or mental impairment ... we will find that you are not disabled."); SSR 96-4p, 1996 WL 374187 at *1("In the absence of a showing that there is a medically determinable physical or mental impairment, an individual must be found not disabled at step 2 of the sequential evaluation process.").

23

To be medically determinable, an impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-4p, 1996 WL 374187 at *1. "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." Id. at 2. Where an ALJ finds that an impairment is not medically determinable, this impairment is not considered in the later steps of the sequential evaluation. Therefore, when a finding that an impairment is not medically determinable is not supported by substantial evidence at step two, such an error undermines the  finding of each subsequent step of the sequential evaluation process. See Crayton v. Astrue, No. 4:10-CV-01235, 2011 U.S. Dist. Lexis 139414, 54 (M.D.Pa. Sept. 30, 2011)("The failure of the administrative law judge to find the above noted conditions as medically determinable impairments, or to give adequate explanation for discounting them, makes his decisions at steps two and four of the sequential evaluation process defective.").

Once an impairment is deemed medically determinable, an ALJ must assess whether that impairment is severe.  The Commissioner's regulations provide that "[a]n impairment is not severe if it does not

24

significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a); see also SSR 85-28, 1985 WL 56856 at *3("An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

If, however, the claimant has *any* medically determinable impairment that is severe, the evaluation process continues. Id. The Third Circuit has observed that "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Moreover, any doubt as to whether a claimant has made a sufficiency showing of severity at step two should be resolved in favor of the applicant. Id.; see also SSR 96-3p, 1996 WL 374181 at *2.

Unlike an error in determining whether an impairment is medically determinable, generally a decision is not defective where an ALJ finds that a particular impairment is medically determinable, but subsequently errs by determining that it is non-severe as long some other medical

condition was found severe at step two. See e.g., Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n. 2 (3d Cir. 2007)("Because the ALJ found in Salles's favor at step two, even if he had erroneously found that some of her other impairments were non-severe, any error was harmless."); Shedden v. Astrue, No. 4:10-CV-2515, 2012 WL 760632 at *9 (M.D.Pa. Mar. 7, 2012)("A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two."). The Social Security regulations contemplate that, in assessing a claimant's RFC prior to step four, the ALJ considers the symptoms of all medically determinable impairments, whether they are found severe or non-severe at step-two. 20 C.F.R. §404.1545(a)(2).

In this case, the ALJ explained at step two that:

In August/September 2012, she was hospitalized for nausea, vomiting and diarrhea and resultant hypokalemia. She was given IV fluids and potassium replacement and improved. She was discharged with a diagnosis of gastroenteritis and it was noted as resolved at her September 12, 2012 visit (Exhibits 11F/2-9, 4F/6). . . . Her abdominal examinations are unremarkable and she reports improvement, weight gain, and no recent nausea and vomiting in September 2013. The record also indicates that she has gained weight, weighing 145 pounds as of October 2013 (Exhibits 12F, 13F). The evidence of record simply does not support the frequency and severity

26

of nausea and vomiting episodes alleged by claimant. The
record also demonstrates improvement with treatment and
weight gain.

(Tr. 22).

Bearing these principles in mind, we find that even if the ALJ had

erred in finding that Ms. Mace's gastroenteritis was non-severe, Ms. Mace

has failed to show how this error undermined the ALJ's ultimate

conclusion. The ALJ clearly considered the limitations resulting from Ms.

Mace's anxiety-induced nausea and vomiting when she assessed Ms.

Mace's RFC. As such, we find that any failure to find Ms. Mace's

gastroenteritis to be non-severe at step two is harmless.

### C.   WHETHER THE ALJ ACCORDED APPROPRIATE WEIGHT TO THE OPINION OF DR. TOLAN

In her decision, the ALJ accorded "little" weight to the three medical

source statements submitted by Dr. Tolan in January 2013, March 2013,

and August 2013. The ALJ explained that the assessments:

> are unsupported by the longitudinal record, including Dr.
> Tolan's own actual treatment records and relatively benign
> mental status examinations. Although at times since the
> alleged onset date he noted depression or dysthymic mood or
> anxiety, she had coherent thought process, no suicidal or
> homicidal ideations, no delusions, and fair insight and
> judgment. He appears to have relied heavily on claimant's
> own subjective report of symptomatology and report that

stress/tensions causes her chronic nausea/ vomiting because his treatment records show overall stability and demonstrate that her mental impairments are controlled with medication (Exhibit 14F). His own progress notes fail to support such marked limitations opinion in his medical source statements. Furthermore as outlined above, her diagnostic work-up and examination findings are inconsistent with any severe gastrointestinal impairment.

(Tr. 29).

Instead, the ALJ accorded "moderate" weight to the mental RFC assessment by nonexamining State agency medical consultant, Dr. Taren.

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Generally, more weight is given to sources who have treated the claimant, like Dr. Tolan than to sources like Dr. Taren, who have not. 20 C.F.R. § 404.1527(c)(1). However, SSR 96-6p provides that the opinion of a State agency medical consultant might be entitled to more weight than even a treating source if the State agency psychologist's opinion is based on a review of a complete case record that includes a medical report from a specialist

28

which provides more detailed and comprehensive information than what was available to the treating source. 1996 WL 374180 at *3.

The Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to non-controlling medical opinions like those in this case: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting

Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Ms. Mace argues that Dr. Tolan's medical source statement was improperly discounted. Specifically, she alleges that Dr. Tolan's medical source statements should not have been discounted because as Ms. Mace's longtime treating psychiatrist, Dr. Tolan's opinions are entitled to great deference pursuant to 20 C.F.R. § 404.1527(c)(2) and SSR 96-2p. (Doc. 16 pp. 12-13). She asserts that the ALJ improperly assessed these opinions by focusing on notes that Ms. Mace improved or was "stable" and minimized Dr. Tolan's accounts where Ms. Mace's symptoms were more severe. Ms. Mace also argues that it is improper for an ALJ to reject a medical source's assessment because the assessment is based on a claimant's subjective statements. We find that Ms. Mace's assertions lack merit.

In support of her argument, Ms. Mace relies on a check-box portion of Dr. Tolan's treatment notes suggesting the existence of certain symptoms including: hopelessness, anxious mood, depressed or dysthymic mood, flat or restricted affect, and delayed stream of thought. (Doc. 16 p. 13). Our review of the ALJ's decision reveals that she referenced these

symptoms in her summary of the evidence, and explained that Ms. Mace's treatment notes read as a whole demonstrate that her condition is more stable than Dr. Tolan suggests. (See Tr. 29). As such, we find Ms. Mace's argument that the ALJ ignored these findings lacks merit.

Similarly, we find that it is not error for an ALJ to reject or discount a medical opinion on the premise that it was based on the claimant's subjective complaints. "An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." Morris v. Barnhart, 78 F. App'x 820, 825 (3d Cir. 2003). In her decision, the ALJ found that Ms. Mace's allegations were not entirely credible. (Tr. 27). Ms. Mace does not challenge this assessment. Furthermore, we agree with the ALJ that the bulk of Dr. Tolan's treatment notes and his medical source statements appear to be based on Ms. Mace's subjective statements about the intensity of her anxiety, nausea, and vomiting in response to the extreme work stress. In her RFC assessment, the ALJ limited Ms. Mace to working in a low stress environment with no more than occasional decision-making and or changes. There is little evidence that suggests that Ms. Mace's condition

31

would be aggravated while engaging in the type of low stress work described by the ALJ.

### D. WHETHER THE ALJ PROPERLY ASSESSED MS. MACE'S CLAIMS UNDER LISTING 12.04

Listing 12.04 pertains to affective disorders. Affective disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.04. In this context "mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." Id. The required level of severity of this impairment is met when the requirements of in both section 12.04A and 12.04B of the listing are met.

In this case, Ms. Mace alleges that the ALJ's determination that she did not meet the requirements of 12.04B is not "proper." Section 12.04B of the Listing of Impairments can only be satisfied when the claimant's affective disorder results in at least two of the following: "marked" restriction of activities of daily living; "marked" difficulties maintaining social functioning; "marked" difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of

extended duration.[5] Id. Ms. Mace argues that the ALJ should have relied on Dr. Tolan's assessment that she had "marked" limitations in the first three criteria of 12.04B, and had multiple episodes of decompensation during periods where she experienced extreme nausea and constant vomiting.[6]   Instead, the ALJ generally relied on Dr. Taren's PRT assessment and credible portions of Ms. Mace's testimony to conclude Ms. Mace had a mild restriction of activities of daily living, moderate difficulty maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 25).

---

[5] The degree of limitation in the first three functional areas (activities of daily living, social functioning, and maintaining concentration, persistence or pace) is rated on the following five-point scale: none, mild, moderate, marked, and extreme.   20 C.F.R. § 404.1520a(c)(4). A "marked" limitation is not defined by a specific number of deficits in behaviors or activities, and instead is measured by the nature and overall degree of interference a particular impairment has on the claimant's ability to function in a particular area. See 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C1, 2, 3.   The fourth functional area (episodes of decompensation) is rated on the following four-point scale: none, one or two, three, four or more.  20 C.F.R. § 404.1520a(c)(4).

[6]We note that on August 8, 2013, Dr. Tolan submitted a form outlining the requirements of listing 12.04, and included notes under several headings.  It is unclear from this form, however, if Dr. Tolan assessed marked difficulties in each domain because "marked" is the only option on this form. (Tr. 496-498).

We find that this argument is merely a second iteration of Ms. Mace's allegations that the ALJ improperly discounted Dr. Tolan's opinions. As such, we find that it also lacks merit.

### E. WHETHER THE ALJ PROPERLY EVALUATED STATEMENTS BY NON-MEDICAL THIRD PARTY WITNESSES

Statements by a non-medical third party, such as a family member, "may provide information from which inferences and conclusions may be drawn about the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186 at *8.[7] 20 C.F.R. 404.1529(c)(1) states that statements by "other persons" should be considered in assessing a claimant's subjective statements, and SSR 06-3p articulates the Commissioner's position on how such statements should be considered at the hearing level.

---

[7]SSR 96-7p, has since been superseded by SSR 16-3p. The new ruling eliminates the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 2229029 at *1. A comparison of these rulings reveals that there are few substantive changes. Both rulings outline a two-step process to evaluate a claimant's subjective statements and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms. Because the ALJ and the parties cite to SSR 96-7p, we rely on this ruling as well. However, our analysis would not be different under the new ruling.

2006 WL 2329939. "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." Id. at 6. "To properly evaluate these factors, the ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility." Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014)(citing Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 506 (3d Cir. 2009)). "However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible." Id. (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).

In this case, Ms. Mace's husband, Jerome Nevick submitted a written function report on January 7, 2013, (Tr. 187-194), and Ms. Mace's daughter, and former representative, Shannon Mace Heller testified about her mother's limitations during Ms. Mace's administrative hearing.[8] (Tr.

---

[8]In her decision the ALJ noted that "[a]t the hearing claimant's current representative indicated she was not in contact with claimant's

54-58). In her decision, the ALJ discounted these statements as follows:

> As for third party evidence, the under signed[sic] has considered the testimony of Shannon Mace Heller, claimant's daughter. Ms. Heller testified that claimant's ability to work is limited due to her anxiety and depression issues which cause her to have episodes of nausea and vomiting. She testified that her symptoms have progressed and gotten worse over time. She is always very sick and has no energy. The undersigned affords little weight to this testimony as it is not well supported in the evidence of record. Ms. Heller is not a physician or psychiatrist trained in examining physical and mental impairments and the examination findings do not support this level of symptomatology. Furthermore, as claimant's daughter, Ms. Heller is not a disinterested third party witness. As such little weight is afforded this testimony.
>
> The undersigned has considered the third party function report of Jerome Nevick (Exhibit 6E). Mr. Nevick indicated claimant was limited in her ability to work due to bouts of back pain and occasional episodes of nausea and vomiting, which render her totally incapacitated. The undersigned has afforded this report little weight. Mr. Nevick is not medically trained to make exacting observations as to the date, frequency, types, and degrees of medical signs and symptoms. Significant weight cannot be given to his statements because they are not consistent with the preponderance of opinions and observations of the medical doctors in this case. In addition, as claimant's husband, he has a clear interest in the outcome of this matter and cannot e considered a disinterested third

---

prior representative; however the record reveals that Shannon Mace Heller, claimant's prior representative and daughter, actually testified on bequest" of Ms. Mace's counsel as a third party witness. (Tr. 19).

party whose statements would not tend to be colored by affection for the claimant and a natural tenancy to agree with the symptoms and limitations alleged by claimant.

(Tr. 29-30).

Ms. Mace argues that the ALJ in this case impermissibly rejected the third party statements in this case as inherently unreliable, and that this constitutes reversible error. In support of her position, she relies on Maellaro v. Colvin, where the Court remanded an ALJ's decision because the claimant's third party witness was "not a medical professional" and had "obvious motivation to support her husband's claim for benefits." No. 3:12-CV-01560, 2014 WL 2770717 (M.D.Pa. Jun. 18, 2014). However, we find that this case is distinguishable on its facts. Unlike in Maellaro, the ALJ in this case did not cite to a lack of medical expertise or obvious financial interest as her only basis for discounting the testimony of Ms. Mace Heller and Mr. Nevick. The ALJ also explained that Ms. Mace Heller's testimony was not well-supported by the record, and that Mr. Nevick's written statements were not consistent with record as whole. Further, we find that the ALJ's position is supported by substantial evidence. During the hearing, Ms. Mace Heller testified that Ms. Mace's episodes of nausea and vomiting were the worst they have ever been. (Tr.

37

55). However, four days before the hearing, Ms. Mace and Mr. Nevick told Dr. Tolan that Ms. Mace had not experienced nausea or vomiting in months. (Tr. 615). Mr. Nevick reports that Ms. Mace is primarily incapacitated due to her constant back pain, and only occasionally has nausea. However, there is no evidence that Ms. Mace sought care for her back impairment after her alleged onset date. (Tr. 27). Thus, even though the ALJ improperly criticized the statements by two third party witnesses in this case, because she also cited a rationale that is proper under the regulations and supported by substantial evidence we find that remand is not warranted. See Fisher v. Bowen, 869 F.2d 1055, 1056 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). Accordingly, we find that there is no basis to disturb the ALJ's assessment of the third party statements by Ms. Mace Heller or Mr. Nevick.

V.    RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that:

(1)    Judgment should be issued in favor of the Commissioner of Social Security and against Julie Ann Mace as set forth in the following paragraph;

(2)   The decision of the Commissioner of Social Security denying Ms. Mace's applications for widow's benefits and disability insurance benefits under Title II of the Social Security Act should be AFFIRMED and Ms. Mace's request for relief should be DENIED; and,

(3)   The clerk of court should close this case.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: September 9, 2016

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Julie Ann Mace, | : | Civil No. 3:15-cv-01229 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Munley) |
| | : | (Magistrate Judge Saporito) |
| Carolyn W. Colvin, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated September 9, 2016. Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: September 9, 2016