IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIE ANN MACE,** : | No. 3:15cv1229 |
|     **Plaintiff** : | |
| : | (Judge Munley) |
| v. : | |
| : | (Magistrate Judge Saporito) |
| **CAROLYN W. COLVIN,** : | |
| **Commissioner of the Social Security** : | |
| **Administration,** : | |
|     **Defendant** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge Joseph F. Saporito, Jr.'s report and recommendation (hereinafter "R&R"). (Doc. 19). The R&R proposes denying Plaintiff Julie Ann Mace's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "SSA") decision denying her application for disability insurance[1] and widow's benefits.[2]  Plaintiff filed objections to the R&R (Doc. 20), and they are ripe for disposition.

---

[1]  Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  42 U.S.C. §§ 415(a) and 416(i)(1).  Here, plaintiff's earnings records establish that she has acquired sufficient quarters of coverage to remain insured through December 31, 2017.  (Doc. 11, Admin. Record (hereinafter "R.") at 19).

[2]  To receive widow's disability benefits, the claimant must show that "she is (1) at least 50 but less than 60 years old; (2) the widow of a wage earner; and (3) under a disability as defined in 42 U.S.C. § 423(d)(2)(A)."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 543 (3d Cir. 2003) (citing 42 U.S.C.

**Background**

On December 5, 2012, plaintiff protectively filed an application for disabled widow and disability insurance benefits due to depression, bipolar disorder, lumbar degenerative disc disease, and digestive issues. (Doc. 11, Admin. Record (hereinafter "R.") at 22-23).[3] Plaintiff alleged that her disability began on July 21, 2012. (R. at 19). On February 1, 2013, the SSA denied plaintiff's applications. (Id.) On March 7, 2013, an attorney adjudicator issued a favorable decision granting plaintiff benefits. (Id.) Administrative Law Judge (hereinafter "ALJ") Michelle Wolfe, however, vacated the award of benefits on July 30, 2013. (Id.) Plaintiff then filed a request for a hearing before the ALJ. (Id.)

The ALJ held a hearing on December 17, 2013, and denied plaintiff's request for benefits on February 27, 2014. (R. at 17-32, 36-64). At the hearing, the ALJ noted that plaintiff was fifty-three (53) years old and lives with her new husband and mother. (R. at 30, 43). The plaintiff stopped

---

§ 402(e)(1)). The standard for demonstrating disability when seeking widow's benefits is the same as the general disability standard discussed *infra*. 20 C.F.R. § 404.335(c).

[3] References to "R. at __" are to pages of the administrative record filed by the defendant as part of her answer on April 30, 2015.

2

working in July 2012. (R. at 45). Presently, plaintiff receives a monthly state disability payment of $854.00. (Id.)

Plaintiff testified that she cannot work because she suffers from bouts of vomiting, which last for seven to fifteen days. (R. at 44). Plaintiff also stated that she cannot work because her depression precludes her from doing anything. (Id.) Plaintiff further noted that she has a driver's license, but she has not driven since suffering a seizure in March 2013. (Id.)

Regarding daily activities, plaintiff wakes up at 5:00 a.m. and sits on the couch and watches television for most of the day. (R. at 45). Plaintiff stopped grocery shopping, cooking, and cleaning in July 2013 because she no longer had the energy. (R. at 45). Plaintiff's inability to focus precludes her from using a computer or reading books, magazines, and newspapers. (R. at 46).

In a decision issued February 27, 2014, the ALJ denied plaintiff's claim, finding that she was not "disabled" as of July 21, 2010 and thus not entitled to benefits. (R. at 32). Plaintiff then filed for review before the Social Security Administration Office of Disability Adjudication and Review Appeals Council. (R. at 14-15). The Appeals Council denied plaintiff's request for review on April 20, 2015. (R. at 1-6). Thus, the ALJ's decision

became the final decision of the Commissioner of Social Security in plaintiff's case.[4]

Subsequently, plaintiff instituted the instant appeal to challenge the denial of benefits.[5] (Doc. 1, Compl.). She argues that substantial evidence fails to support the ALJ's decision. The Clerk of Court assigned plaintiff's case to Magistrate Judge Saporito to file an R&R regarding the merits of plaintiff's appeal. Magistrate Judge Saporito issued an R&R on September 9, 2016, which proposes denying plaintiff's appeal. Plaintiff filed objections to the R&R (Doc. 20), and they are ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under

---

[4] The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within sixty (60) days after receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981.

[5] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

4

paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may

also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be

6

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and widow's benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe;[6] (3)

---

[6] A "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, and crawl. 20 C.F.R. § 404.1545(b). An individual's basic mental abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).
    The determination of whether a claimant has any severe impairment that has lasted or is expected to last for a continuous period of at least

has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In applying the five-step sequential analysis in the instant case, the ALJ found at Step 1 that plaintiff had not engaged in substantial gainful activity since July 21, 2012. (R. at 22). At Step 2, she found that plaintiff has the following severe impairments: major depressive disorder, bipolar disorder, and lumbar degenerative disc disease. (R. at 22-23). At Step 3, the ALJ found that plaintiff does not have an impairment or combination of

---

twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c). If a claimant does not have any severe impairment or combination of impairments which significantly limits her physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. 20 C.F.R. § 404.1509, 404.1520(c).

If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. § 404.1523, 404.1545(a)(2).

impairments that meets or medically equals the severity of one of the listed impairments. (R. at 23-25).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to:

> Perform medium work . . . . Claimant can lift/carry 25 pounds frequently and up to 50 pounds occasionally. She can sit for 2 hours and stand/walk for 6 hours in an 8-hour day. She can frequently balance, stoop, and crouch. She can only occasionally kneel, crawl, and climb but never on ladders, ropes, or scaffolds. She can do simple, routine tasks but no complex tasks, in a low stress environment. Low stress is defined as only occasional decision-making, occasional changes in the work setting, and occasional interaction with the public, co-workers, and supervisors.

(R. at 26). The ALJ then proceeded to Step 4 of the sequential evaluation and received testimony from an impartial vocational expert (hereinafter "VE"). The VE testified that plaintiff cannot perform her past relevant work as a home health assistant. (R. at 30).

Finally, at Step 5, the ALJ determined that plaintiff could still perform other work that exists in significant numbers in the national economy. (R. at 30-31). Specifically, the ALJ found that plaintiff could work as a cleaner, packer, and kitchen worker. (R. at 31). Because the ALJ concluded that plaintiff is capable of making a successful adjustment to other work, she determined that plaintiff is not disabled. (R. at 31).

10

The Clerk of Court assigned plaintiff's appeal to Magistrate Judge Joseph F. Saporito, Jr. for an R&R. Magistrate Judge Saporito recommends denying plaintiff's appeal and upholding the defendant's decision denying plaintiff disability insurance benefits. (Doc. 19). Plaintiff filed objections to the R&R (Doc. 20), and they are ripe for disposition.

Plaintiff's objections raise the following four issues: (1) the ALJ erred by failing to find plaintiff's gastrointestinal impairment severe at Step 2; (2) the ALJ erred by failing to assign great weight to the opinion of plaintiff's examining psychiatrist; (3) the ALJ's determination that plaintiff failed to meet Listing 12.04, Affective Disorders, is erroneous; and (4) the ALJ improperly rejected the testimony and statements of plaintiff's non-medical witnesses. We address only plaintiff's first objection, as it is dispositive.

**I. Plaintiff's gastroenteritis**

Plaintiff first contends that the ALJ's failure to determine that her gastroenteritis is a medically determinable severe mental or physical impairment at step two of the five-step sequential evaluation process is erroneous.[7] Specifically, she avers that her gastrointestinal disorder

---

[7] Step two requires the plaintiff to establish that she has an impairment, or combination of impairments, that is severe, and these impairments

11

caused, and would cause, her to miss work frequently.  The ALJ, however, failed to reflect this limitation in her RFC.  Thus, according to the plaintiff, the ALJ's decision was improper.  After a careful review, we agree with plaintiff.

At step two, the claimant must have a severe impairment "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'"  Id. (quoting SSR 85-28, 1985 WL 56856, at *4).[8]

---

significantly limit her mental or physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c).

[8] SSR 85-28 states that "[g]reat care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued."  1985 WL 56856, at *4.

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two." Id. (quoting Bowen v. Yuckert, 482 U.S. 137, 158, (1987) (O'Connor, J., concurring)). If the claimant can present evidence establishing more than a "slight abnormality," the severity requirement is met. Id. Further, any reasonable doubts in step two should be resolved in the claimant's favor. Id. A reviewing court, however, should not apply a more stringent standard of review. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence. Id. (citation omitted).

In McCrea, the Third Circuit Court of Appeals reiterated that the "burden placed on an applicant at step two is not an exacting one." Id. Although the social security regulations speak in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Id. (citing SSR 85-28, 1985 WL 56856, at *3).

13

McCrea instructs that the determination of whether an applicant has met her burden at step two in the sequential analysis should focus upon her evidence. If such evidence demonstrates that the applicant has "more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Id. at 362; 20 C.F.R. § 404.1520(d)-(f).

In the instant matter, substantial evidence fails to support the ALJ's characterization of plaintiff's gastrointestinal impairment as non-severe for three reasons. First, the objective medical evidence establishes plaintiff's nausea, vomiting, and stomach issues are inseparable from plaintiff's severe mental impairments of major depressive disorder and bipolar disorder. Specifically, the medical evidence demonstrates that plaintiff's mental impairments caused plaintiff to experience a history of low potassium levels [9] over a three-year period from February 2010 through

---

[9] Potassium is a chemical (electrolyte) that is critical to the proper functioning of nerve and muscle cells, particularly heart muscle cells. Low potassium (hypokalemia) refers to a lower than normal potassium level in the bloodstream. Normally, blood potassium level is 3.6 to 5.2 millimoles per liter (mmol/L). Vomiting can result in excessive potassium loss from the digestive tract. DEFINITION OF LOW POTASSIUM (HYPOKALEMIA), Mayo Clinic (July 8, 2014), http://www.mayoclinic.org/symptoms/low-potassium/basics/definition/sym-20050632.

August 2013.[10] Plaintiff's medical evidence also establishes that on August 31, 2012, her low potassium levels, vomiting, and nausea necessitated in-patient treatment at a local hospital for three (3) days to receive intravenous fluids and other treatments.[11] (R. at 500-32).

Second, objective medical testing on February 22, 2013, establishes that plaintiff had two adenomas in her colon, LA grade C reflux esophagitis, and Barrett's esophagus. (R. at 564). An endoscopy performed in September 2013 also demonstrated signs consistent with Barrett's esophagus.[12] (R. at 594, 597). Finally, plaintiff's treating psychologist, Dr.

---

[10] Specifically, plaintiff had the following potassium levels: 3.2 mmol/L on 2/22/10, 3.0 mmol/L on 6/11/10, 3.1 mmol/L on 1/12/11, 3.3 mmol/L on 4/24/12, 2.4 mmol/L on 8/31/12, 3.3 mmol/L on 9/1/12, 3.8 mmol/L on 9/2/12, 3.6 mmol/L on 9/3/12, 4.1 mmol/L on 9/11/12, 3.3 mmol/L on 1/21/13, 3.1 mmol/L on 3/6/13, and 2.9 mmol/L on 8/7/13. (R. at 310, 426, 429, 432, 478, 502, 507, 520, 525, 550 and 561).

[11] While plaintiff's potassium levels were within normal limits on 9/2/12 (3.8 mmol/L), 9/3/12 (3.6 mmol/L), and 9/11/12 (4.1 mmol/L), these three occasions occurred within a nine-day period during and immediately after the plaintiff spent three days in the hospital receiving intravenous fluids and other treatments for low potassium levels. (R. at 500-32).

[12] Confronted with this objective medical evidence, the ALJ relies on a solitary treatment note in September 2013 that "she reports improvement, weight gain, and no recent nausea and vomiting." (R. at 22). The ALJ, however, fails to explain that just the prior month plaintiff reported that she experienced nausea and vomiting for three days. (R. at 542).

15

Keith Tolan, prescribed medications to treat plaintiff's nausea and vomiting from November 2012 to March 2013.

The foregoing medical evidence of plaintiff's gastroenteritis raises, at the very least, a genuine issue regarding its severity.  Given the consistency of the impairment from 2010 to 2013, we cannot agree with the Magistrate Judge that substantial evidence supports the ALJ's finding that plaintiff's gastrointestinal problems and hypokalemia have no more than a minimal effect on her ability to do basic work activities, and therefore, are considered "non-severe."

Resolving all doubts in plaintiff's favor, we find that plaintiff has presented evidence of more than a slight abnormality.  Under the circumstances, a finding to the contrary would be unconscionable. Specifically, plaintiff's objective medical evidence of gastrointestinal problems and consistent complaints of vomiting and nausea meet the *de minimis* burden required at step two.  We find that the ALJ erred in finding that plaintiff's gastrointestinal problems were not severe and vacate and remand the ALJ's decision.[13]

---

[13] Additionally, we cannot conclude that the ALJ's error is harmless. "Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected."  Doran v.

**Conclusion**

For the above-stated reasons, we find that substantial evidence does not support the ALJ's decision denying plaintiff's applications for disability insurance and widow's benefits. Thus, we will sustain plaintiff's objection challenging the ALJ's finding that her gastrointestinal problems were not severe, not adopt the R&R, vacate the Commissioner of Social Security's decision, and remand for a new hearing. An appropriate order follows.

Date:  11/08/2016              s/ James M. Munley
                               **JUDGE JAMES M. MUNLEY**
                               **United States District Court**

---

Colvin, No.3:13cv1756, 2014 WL 4660055, at *5 n.3 (M.D. Pa. Sept. 17, 2014) (quoting Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1998) (internal quotation marks omitted)). Here, the plaintiff suffered prejudice because the ALJ's RFC fails to attribute any limitation to plaintiff's gastrointestinal problems. Specifically, the RFC fails to include any limitation pertaining to plaintiff requiring frequent breaks throughout the workday, beyond normal breaks and lunch periods, resulting from her gastrointestinal problems. The RFC also fails to note that plaintiff may be required to miss a week every two to three months, over and above her vacation and sick time, arising from her gastrointestinal problems. Thus, the ALJ's error was not harmless. As written above, plaintiff has specified her limitations and, at this stage, satisfactorily argued their impact on her ability to work.